IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                                        |     |                              |
|----------------------------------------|-----|------------------------------|
|                                        |  *  |                              |
| SILVERMAN THOMPSON SLUTKIN AND WHITE LLC, |   |                              |
|                                        |  *  |                              |
|     Plaintiff,                         |     |                              |
|                                        |  *  |                              |
|         v.                             |     | CIVIL NO.: WDQ-10-0042       |
|                                        |  *  |                              |
| SUPERMEDIA LLC f/k/a IDEARC MEDIA LLC, |     |                              |
|                                        |  *  |                              |
|     Defendant.                         |     |                              |
|                                        |  *  |                              |

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Silverman, Thompson, Slutkin, & White LLC ("STSW") sued SuperMedia LLC f/k/a Idearc LLC for breach of contract in the Circuit Court for Baltimore County.  The Circuit Court granted a temporary restraining order ("TRO"), and SuperMedia removed to this Court on the basis of diversity.  Pending are STSW's motion for a preliminary injunction and SuperMedia's motion to dissolve the TRO.  A motions hearing was held on January 14, 2010.  For the following reasons, the motions will be denied.[1]

---

[1] Because the TRO expires today, SuperMedia's motion to dissolve will be denied as moot.

I.    Background

On November 23, 2009, STSW and SuperMedia entered into an "Advertising Agreement," under which STSW reserved the outside back cover of the Baltimore City Yellow Pages for its advertisement.  Pl.'s Mot. Prelim. Inj., Ex. 1-A, 1-C.  The Agreement was faxed to Steven G. Silverman, Esq., a partner in STSW, by Mark A. Norris, a sales representative for SuperMedia. *Id*., Ex. 1 (Steven D. Silverman Aff. ¶¶ 1, 9,).  The facsimile transmittal sheet sent "a new Advertising Agreement to reserve the Outside Back Cover for the Baltimore City Directory," and requested Silverman's signature.  *Id*., Ex. 1-A.

The Agreement contained a "Product Information Summary" and "Terms and Conditions."  *Id*., Exs. 1-B, 1-C.  The Product Information Summary was signed by Silverman.  *Id*., 1-B; Silverman Aff. ¶ 9.  The text above the signature block stated that:

> The person signing on behalf of Advertiser or orally authorizing the Ads or Services (i) certifies that he or she is either the Advertiser or is authorized by the Advertiser to sign or orally authorize this agreement; and (ii) acknowledges that he or she has received, read and agrees to the Terms and Conditions that are a part of this Agreement.

*Id*., Ex. 1-B.  Silverman's signature was on a line for the person authorizing the advertisement.  *Id*.

Silverman contacted Norris to determine whether SuperMedia had received the Agreement and whether further action was

required.  Silverman Aff. ¶ 11.  Norris told him that the
Agreement was a "done deal," and that the next step would be to
start creating artwork for the advertisement.  *Id*.  STSW, in
consultation with Norris, began creating artwork.  Silverman Aff.
¶ 12.  SuperMedia sent Silverman a "page proof" copy of a
proposed advertisement, which indicated that the outside back
cover had been "sold" to STSW.  *Id*. ¶ 13.

On January 5, 2010, Norris informed Silverman that STSW's
advertisement had been cancelled.  *Id*. ¶ 15.  When Silverman
protested, Norris explained that the decision had been made by
"higher ups" at SuperMedia.  Id.

On January 6, 2010, STSW filed this suit in the Circuit
Court for Baltimore County.  Paper No. 2.  STSW moved for a TRO
and a preliminary injunction requiring SuperMedia to run the STSW
advertisement.  Paper Nos. 3, 7, 18.  On January 6, 2010, the
Circuit Court issued a TRO enjoining SuperMedia from printing any
advertisement on the back cover of the Yellow Pages other than
STSW's; the TRO expires on January 15, 2010.  Paper No. 5.  On
January 7, 2010, SuperMedia removed to this Court on the basis of
diversity, and filed a motion to dissolve the TRO.  Paper Nos. 1,
15.

II.  Analysis

A preliminary injunction should be granted only to protect
the status quo and prevent irreparable harm.  *See In re Microsoft*

*Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003).   To

obtain a preliminary injunction, a party must show that: (1) it

is likely to succeed on the merits, (2) it is likely to suffer

irreparable harm absent preliminary relief, (3) the balance of

equities tips in its favor, and (4) an injunction is in the

public interest.   *Real Truth About Obama, Inc. v. Fed. Election*

*Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (*quoting Winter v.*

*Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)).[2]

All four factors must be shown, and the movant bears the burden

on each.   *Id.* at 345-46.

A.  Likelihood of Success on the Merits

STSW must make a "clear showing that it is likely to succeed

at trial on the merits."   *Id.* at 347.[3]   STSW argues that it is

likely to succeed at trial because, under the Advertising

Agreement, SuperMedia promised that STSW's advertisement would

---

[2] Before *Winter*, the *Blackwelder* "balance-of-hardships test"
governed the issuance of preliminary injunctions in the Fourth
Circuit.  *Real Truth*, 575 F.3d at 346.  *Real Truth* changed the
standard by (1) requiring a clear showing that the plaintiff is
likely to succeed on the merits at trial and is likely to suffer
irreparable harm absent preliminary relief, (2) instructing the
Court to pay "particular regard for the public consequences," and
(3) requiring the presence of all four factors of the *Winter*
test. *Id.* at 346-47.  The *Blackwelder* balancing approach "may no
longer be applied in granting or denying preliminary injunctions
in the Fourth Circuit."  *Id.* at 347.

[3] This requirement "is far stricter than the *Blackwelder*
requirement that the plaintiff demonstrate only a grave or
serious question for litigation." *Id.* at 346-47.

appear on the back cover of the Yellow Pages; thus, SuperMedia breached the contract when it cancelled the advertisement.[4]

SuperMedia counters that the Agreement was not a guarantee of the back cover, but merely STSW's order for it; under the Agreement SuperMedia could cancel this order at any time for any reason.  According to SuperMedia's Regional Vice President, Francis J. Lee, III:

> By signing the . . . Advertising Agreement, a customer places an order for the advertising identified, which the customer contractually authorizes SuperMedia to publish in the identified directory pursuant to the governing Terms and Conditions.  The contract acts as an authorization of SuperMedia to publish the advertising ordered and if so published, establishes the obligation of the customer to pay the contractual price for those ads.

Def.'s Opp., Ex. B (Francis J. Lee, III Decl. ¶ 7, Jan. 11, 2010).  SuperMedia contends that the Agreement was not a contract, but an offer by STSW that SuperMedia could accept by

---

[4] STSW's relies solely on its "written contract" with SuperMedia--the Advertising Agreement--not the various oral representations by SuperMedia's personnel.  *See* Pl.'s Mot. for Prelim. Inj. 1. This reliance is consistent with the Agreement's merger clause. Under Clause 20, "Entire Agreement," the Advertising Agreement:

> constitutes the entire agreement between [STSW] and us [SuperMedia] and supersedes all prior agreements and representations, whether express or implied, written or oral, with respect to the Ad or Services . . . . Neither [STSW] nor any Idearc employee or agent is authorized to change or add to this Agreement or any other documents that are part of this Agreement in any way, and any purported change or addition, whether oral or written, is void.

Agreement, cl. 20.

publishing the proposed advertisement.[5]

SuperMedia relies primarily on Clause 11:

> [SuperMedia] *reserve[s] the sole right to determine* (and may change at any time without notice to you) the design, content, size, geographic distribution, and appearance of, and the types of advertising offered in, our Publications, Electronic Platform, and Services, and how, where, how many, when, and *whether they are published*, distributed, reissued or displayed.  [SuperMedia] *may reject all or any portion of Ads or Services at any time and for any reason (even if previously approved).*  If rejected, [SuperMedia] will, as our sole obligation, refund any advance payments for that Ad or Service.

Pl.'s Mot. Prelim. Inj., Ex. 1-C [hereinafter "Agreement"]

(emphasis added).  SuperMedia argues that the italicized portions

of Clause 11 permitted it to cancel STSW's advertisement,

provided that it refund any advance payment.

STSW argues that this provision does not apply to the

---

[5] SuperMedia's argument appears to be that, although STSW's "authorization" binds it to the terms of the Agreement, SuperMedia is not bound until it publishes STSW's advertisement. In other words, at the time STSW signed the Agreement, any "promise" by SuperMedia was "illusory" and unenforceable.  Under this view, the Agreement is merely SuperMedia's solicitation of an offer from STSW. STSW's "authorization" would be the solicited offer, which SuperMedia could accept by performing (*i.e.*, publishing the advertisement).  If SuperMedia accepted, a unilateral contract would be formed.

Texas law, which the parties agree governs this dispute, recognizes SuperMedia's theory of contract formation. In *Alex Sheshunoff Management Services v. Johnson*, the Texas Supreme Court explained that "[i]f only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance."  *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 649-50 (Tex. 2006).

cancellation of its advertisement because SuperMedia did not
"reject" the advertisement.  STSW concedes that SuperMedia has
the right to cancel advertisements to prevent, for example, the
publication of offensive content.  Because the cancellation of
STSW's advertisement was not based on its content, STSW contends
that it was not "rejected."  STSW would construe "reject" to mean
a cancellation based on SuperMedia's objection to the content of
the advertisement.

Given that "[SuperMedia] may reject all or any portion of
Ads . . . *at any time and for any reason*," Agreement, cl. 13
(emphasis added), its right to "reject" may not be as limited as
STSW contends.  Rather, this provision seems consistent with
SuperMedia's argument that the Agreement was merely STSW's offer,
which SuperMedia, as the offeree, was free to reject at any time
before acceptance.  *See American Life Ins. Co. v. Nabors*, 76
S.W.2d 497, 500 (Tex. 1934)("[A]n offer creates no duty in the
offeree to accept or to reject[.]").[6]

---

[6] That SuperMedia reserved the right to reject an advertisement
"even if previously approved" suggests that the Agreement
contemplated only *full* performance (*i.e.*, actual publication) as
the method of acceptance.  Part performance, such as the
expenditure of time and money, may sometimes constitute
acceptance of an offer to enter into a unilateral contract.  *See,
e.g.*, *Sunshine v. Manos*, 496 S.W.2d 195, 199 (Tex. Civ. App.
1973).  Clause 11 appears to have been drafted so that any
expenditure of time and money by SuperMedia during the approval
process--such as designing the advertisement--would not
constitute acceptance.  By giving SuperMedia the power to reject
even after approval, the Agreement seems to contemplate
acceptance as the publication of an advertisement.

STSW also relies on Clause 13, under which

> Except for Ads [SuperMedia] designate[s] as limited
> inventory advertising, [SuperMedia] do[es] not
> guarantee the placement or position of any Ad (or the
> Ad of any other advertiser) on or within any
> publication . . . or any page, cover, or heading and
> will not provide any adjustments on claims relating to
> placement for any Ad.

Agreement, cl. 13.  Because, as SuperMedia concedes, the back
cover of the Yellow Pages is "limited inventory advertising,"
STSW argues that Clause 13 guarantees the publication of STSW's
advertisement.

Although Clause 11 gives SuperMedia the right to "reject *all*
. . . Ads . . . at any time and *for any reason*," STSW's reading
of Clause 13 would create an exception to this right for limited
inventory advertising.  STSW reads Clause 13's guarantee of
"placement or position" for limited inventory advertising as a
guarantee of *publication* of the advertisement; under this
reading, SuperMedia would not be able to "reject" a limited
inventory advertisement "at any time [or] for any reason."

In construing the Agreement, the Court must "examine and
consider the entire writing in an effort to harmonize and give
effect to all provisions." *Coker v. Coker*, 650 S.W.2d 391, 393-
94 (Tex. 1983).  If the Agreement is an order (*i.e.*, an offer),
Clauses 11 and 13 are not in tension.  Clause 13's guarantee of
"placement or position" for limited inventory advertisements may
be a guarantee not of *publication* but of the *location* of the

advertisement in the Yellow Pages.  Certain clauses in the

Agreement suggest that use of "placement" in Clause 13 does not

mean publication.[7]

---

[7] Clause 1, titled "Order," states that "[b]y signing [the
agreement] . . . [STSW] authorize[s] [SuperMedia] to publish the
Ads listed in this Agreement in the applicable Publications[.]"
Agreement, cl. 1.  Under this Clause, SuperMedia does not promise
publication; STSW merely authorizes publication of the proposed
advertisement. This language is similar to the language on the
first page of the Advertising Agreement--the "Product Information
Summary"--which contains the signature block for the customer.
It states that

> The person signing on behalf of Advertiser or
> orally *authorizing* the Ads or Services (i)
> certifies that he or she is either the Advertiser
> or is authorized by the Advertiser to sign or
> orally authorize this Agreement; and (ii)
> acknowledges that he or she has read and
> agrees to the Terms and Conditions that are a part
> of this Agreement.

Agreement, p. 1 (emphasis added).

Clause 2, which governs the customer's right to cancel or
revise the advertisement states that "[STSW] may revise or cancel
[its] *request* for Ads or Services only by written notice [.]"
(emphasis added).  Agreement, cl. 2.  Like Clause 1, Clause 2
suggests that the agreement is not a guarantee of publication.
Rather, these clauses suggest that the agreement is an offer by
STSW, which SuperMedia is free to accept or reject.  This
conclusion also finds support in Clause 11, under which payment
is only due if the advertisement is accepted; "if rejected
[SuperMedia] will, as [its] sole obligation, refund any advance
payment for th[e] Ad or Service." Agreement, cl. 11.

During oral argument, counsel for STSW argued that Clause
17, "Limited Inventory Items," also suggested that the Agreement
constitutes a promise of publication.  Under Clause 17:

> "If [STSW]'s Ad published in our print directory is
> designated as a limited inventory item that is offered
> in the next issue of the same directory, you will have
> the right of first refusal for that same item of

SuperMedia's interpretation is consistent with the broad power under Clause 11 to "reject all or any portion of Ads . . . at any time for any reason" as merely the power to reject the customer's offer.  It also reconciles Clause 11's right to reject with Clause 13's "guarantee" of "placement or position" for limited inventory advertising.  Under SuperMedia's interpretation, it could reject an order for a limited inventory advertisement "at any time and for any reason," but could not accept such an order by publishing the advertisement in another location.  Under Clause 13 SuperMedia may accept offers for limited inventory advertising only by publishing the advertise-ments in designated locations in the directory.  This restriction protects customers who buy limited inventory advertisements like the back cover; Supermedia may not run those advertisements in

---

advertising in the next issue of the same directory if you: (i)sign a new Agreement to renew the Ad at the then current rate prior to the renewal due date we specify; and (ii) have paid all amounts due under this Agreement as of that renewal date.  If you do not meet these requirements or if you cancel the limited inventory item, we may immediately offer the advertising item to other interested parties.  You may not assign, sell or transfer the right of first refusal granted in this Section.

Agreement, cl. 17.  This Clause creates a right of future first refusal that arises only after an advertisement has been published in the directory.  It does not address the question of whether the Agreement creates a right to publication in the first instance.  Indeed, because it creates a right in the customer that is conditioned on publication, it is arguably more consistent with SuperMedia's contention that the Agreement only

less desirable locations in the directory.

SuperMedia's interpretation harmonizes the Clauses of the Agreement.  STSW raises a serious question for litigation, but fails to make a clear showing of likely success on its breach of contract suit.

III. Conclusion

For the reasons stated above, STSW's motion for a preliminary injunction and SuperMedia's motion to dissolve the TRO will be denied.


January 15, 2010                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge

becomes binding upon publication of the customer's proposed
advertisement.

11